We're ready to hear your argument, Mr. Stone. Good morning, Your Honors. I'm Victor Stone. I represent the prime victim in this case, Carlos Brown. He petitioned to this court, and the court ordered full briefing in this argument because the federal restitution laws and crime victims laws, which were amplified in 2004, specifically and specifically require that courts ensure crime victims are afforded their rights, which includes full and timely restitution as provided in law, did not happen in this case. The restitution as provided in law includes a whole litany of procedures in 18 OSC 3664 that are there, and as the legislative history of the 2004 Act states, and we quoted it in our brief, pages 35 to 36, that the existing restitution laws would be made more effective and that the poor treatment of crime victims was being rectified. Part of the reason for that is, as a practical matter, you won't find any long line of cases dealing with crime victims who successfully sued the perpetrator of the crime. The reason you won't find those cases is, of course, for the most part, the victims who have been hurt then, like my client here, don't have the money to fund private lawsuits. The lawyers, as also was reflected in the transcript here below, don't want to take the cases, especially when they see a defendant who's going to jail or is, in this case, is represented by a public defender because they don't see any likelihood they're going to wind up getting a contingency fee that's going to make sense for them, given that they're going to, in a civil context, be expected to respond and ask for discovery, expensive depositions. Those cases are not on the expedited. Since you've appealed the decision from below, why don't you tell us as exactly as you can what you say the district court did wrong here? Yes, Your Honor. Well, what was presented for restitution below, what was sought, was a very simplified request, also taking into account, realistically, the assets of the defendant. What the victim did was, came in and he made a simple request and said, I've been in the hospital with six operations, I have metal rods and plates in my body, I'm in all kinds of pain, submitted an affidavit from himself, his caretaker, his mother testified, he testified, he gave a statement to the court, he had an affidavit from his doctor, and he said, I haven't been able to work from the date of that criminal injury up till today. And at a minimum, I think I'm entitled, under the statute, to my lost wages. Although there was some discussion of that, ultimately, in the transcript, I'm sorry, it's in the transcript, but in the joint appendix at page 126, the judge accepted that the victim had been unable to work from the time he was injured right up to the time of the restitution hearing. And then what the... We're talking how much? How much money? The victim then asked for his lost wages, which he calculated based on his submitted sworn tax return of $366 a week for the 42 and a half weeks up to the date of the hearing, and it came out to about $15,000. $15,000, in a civil context, the kind of injuries your client maintained here, of course, he would be entitled to vastly larger sums, so I take it there must be some inadequacy on that end to pursue this $15,000 of restitution in a criminal court. But in doing so, at least in terms of the authority of the sentencing judge for misdemeanor offenses, it's clear the statute says that he may order them in lieu of other penalties that's authorized by law. And you seem to want us to change that language to, is required to do so, when that's not what the statute requires. If I may answer both parts of that question, Your Honor. As to the first part, the fact that two attorneys, and this is in the record, turned down the victim when he wanted to file a civil suit, were not interested, I think reflects the fact that if anybody might have been interested, it might have been the insurance companies that paid the half a million dollars worth of medical expenses, not the victim. And whether insurance companies would have filed, it wouldn't have helped the victim. I think you're missing the question. I think that what my colleague, and I think it's a good point, I think that you have an entitlement as a matter of right to this. And surely you don't because the district court, the magistrate judge here, has discretion, right? Yes, Your Honor. Okay, so in saying that the district court abused its discretion, you're not just telling us that your man, and frankly, as I read the record, it sounds like a pretty sympathetic case, is entitled to this money. What you, I think your argument must be, is that the district court didn't give that argument fair consideration, didn't look at all the facts under the statute. Is that right? Well, it's a little more nuanced than that, Your Honor. Good. I love nuance. Go, go, go. The 2004 statute 3771 that required courts to ensure that a victim got his rights, as well as the judge himself, recognized that those rights are. Correct, Your Honor. And those rights are in 3664. 3664A required the pre-sentence report writer in the probation department to provide the judge with a restitution determination that was sufficient, and he did. He got affidavits, and he provided one. What's your beef is? What's your problem is? That was okay. We got that far. But the judge said in his written ruling, without ordering the probation officer to go back for more data, without referring the issue to a special master, without asking whether or not, well, and asking for evidentiary rules, which are not appropriate. He said it was too complex, right? Excuse me? He said it was too complex. I'm trying to get you to the end of your sentence. We said it's not too complex. He, the district judge, the magistrate, said it was too complex. That's correct. And what you are saying is that he should have looked at the factors and made a determination consistent with the statute. He could do that, and we would then reverse, we would then just consider whether there was an abuse of discretion. But you say the abuse is here is that he didn't do that. That's right. He didn't follow the procedures, Your Honor, before saying I'm relying on an old Seventh Circuit case that says future lost income. And the judge picked this up on his own. He found the case, he cited it, he relied on it, and spoke about future lost income being so difficult to ascertain that he wasn't going to order past lost income that was documented by a straightforward tax return. And are there specific things you asked the district court to do, to analyze, that you say you asked but the court did not do it? That's right, Your Honor. Okay. Well, tell us what those are. We submitted to both the probation department and the court a very simple, straightforward sworn tax return that was prepared on the penalties and pains of perjury that showed what the lost wages in the past were per week by the injured victim. The judge declined. When he looked at that, in my opinion, there's got to be more than simply the victim's statement to award the restitution with regard to the evidence you just mentioned. That's right. And that goes directly... So you told him and he made a decision. Why is that decision an abuse of discretion? Well, it's an abuse of discretion, and we cited repeatedly in the reply brief the case of United States v. Powell, which also cites United States v. Terry, an earlier case. And if I can just read just two sentences, the opinion in the analysis citing Terry says, a mere objection to the finding in the pre-sentence report is not sufficient. The defendant has an affirmative duty to make a showing that the information in the pre-sentence report is unreliable and articulate the reasons why the facts contained are untrue or inaccurate. Given the presumption of reliability and the routine use of hearsay evidence found within pre-sentence reports, such evidence cannot be categorically infirm. No one ever said, the court never said, either in court or to the probation department, go back, you determined this was sufficient for me, the tax return, but I don't think it's sufficient. I want to see more. And if the court had done that, which that's one of the requirements, another way to handle it is to refer it out, if the court wishes, to a special master. But the court didn't make any effort. Instead, the court just said, I need evidence which is just the exact opposite of what the Powell case says, because the Powell case also says in the paragraph before that, that the confrontation clause is not required when dealing with pre-sentence reports. If that was the case, no judge could ever sentence a defendant because virtually everything in a pre-sentence report is hearsay. But the judge didn't do that. He just said, well, I'm not happy, you get nothing, and your remedy, he tells him, is to file a civil suit. Well, that is the prior practice that was being changed. I thought, maybe I misread this record and misunderstand this case. Maybe I'm thinking about another case. I thought that the magistrate judge relied on the fact that he thought that this was too complex to figure out. The complexity exception. Is that wrong? No, that's right, Your Honor. He decided in a case which is the least complex that I think that you can find in the literature. I understand your argument. But that is an argument that's attacking a factual finding. What you have to bring to us is, because the district court makes factual findings, you have to say he didn't do the correct legal analysis in determining that the complexity exception or the complexity rule applied here. That's correct. That's what your basis of your appeal is. Well, it's twofold, Your Honor. It's twofold. He didn't get far enough to determine if it was complex, because he never asked for anything that impeached the tax return. He determined it was too complex, though. He determined that. That's correct. And if he had said... He didn't go through the right steps, but that's what you're talking to us about. Well, that's the first part. But the second part is, I don't think a judge can say something is too complex and have no basis at all for it, just like the judge couldn't decide as a discretionary matter, I've decided I'm not giving restitution to anybody with red hair. There has to be something that backs up a determination or it's an abuse of discretion. And here, you've got a tax return that's sworn, prepared by a third party, filed under penalties of perjury with the United States government. It's exactly what the defense counsel had asked for earlier as proof of wages, of lost wages, when the issue came up earlier in the earlier hearing. The judge didn't say then, oh, and by the way, submit more. The probation department finds it's a sufficient basis for them to recommend $366 a week. And I know that only because it was mentioned in open court, not because we got the pre-sentence investigation report. And the judge just decides for no expressed reason at all that that's too complex. Well, before the judge can decide that, when he's got a facially proper request and a very simple one, then it seems to me he's got to follow 3664. That's what even the discretionary restitution provision says in the last sentence. The court must comply with 3664. That is what the court even articulated out loud. He said, I know I have to comply. And he named the probation restitution statute and 3663. And then he said, and 3664. The court was well aware that that statute was there. But before a judge can just decide not to follow the only evidence in front of him of what the person earned and sworn evidence, then the court has a couple of options procedurally. And none of those were chosen, which is why what we're asking for here is simply a remand so the court can and should, under directions from this court, we believe, exercise one of those options. I would like to say that I think the request we have asked for for a remand is important because the judge said he rarely handles such cases, and the transcript shows he said he's not equipped. Well, if he keeps refusing, the court is never going to be equipped. Thank you. I think we understand your position. Thank you. May it please the court. Your Honors, my name is Jason Medinger on behalf of the United States. One of the respondents in this matter, the other respondent is counsel for the defendant. I'll be very brief. With me at counsel table is Assistant United States Attorney Jane Nathan. She was the trial counsel in this matter. I'll just state briefly for the court. In this matter, the government entered into a plea agreement with the defendant whereby the government would take no position whether or not restitution was going to be offered. We made that agreement with the consent of the victim's counsel. And the idea was that the victim's counsel would then have the chance to advocate, as he did in the trial court and as he is here. So consistent with our plea agreement, our position here on appeal is that we're going to Does the United States have a policy that determines this? So we don't have a policy, Your Honor. It's just the individual. It just seemed to me I've never seen this before happen in 25 years. And so I just wondered if this was some sort of policy that the government had. So it's not, Your Honor. It's something that's done on a case-by-case basis. It's like a serious accident. And the government is, well, the government's doing what it did. Well, what I'll say, Your Honor, is in some respects, one, in the CDRA, it does actually permit us to do this. I didn't say you couldn't do it. And, Your Honor, I'll say, too, impacting our decision in all candor was that there was a victim's counsel here who did want us to do this. Sure. In other words, it does. It ensures that the conviction stands and that there's no litigation risk. So when parties have a dispute and they want to have the Solicitor General's office weigh in, generally the Solicitor General's office talks to people from both sides. And I was just curious if you talked to the victim's lawyers, too. I'm sorry, Your Honor, in terms of this appeal? In terms of the position that the government was going to take. Oh, well, we did, Your Honor. Again, so we – You talked to both the – We did. Perpetrator – oh, okay. Yes, we talked to both the defense counsel – You decided to make that – That was – he did that before he entered into the plea agreement. Correct. And that appears at Joint Appendix page 25. That's why at the Rule 11, the guilty plea, the victim's counsel was there. I understand. They had known about that. So that was – You understand what my question is. You talked to both the perpetrator's counsel and the victim's counsel. Correct, Your Honor, we did. And so with that, Your Honor, we want to obviously – the government's position here was not to take a position on the recitation. Correct. The impact of doing that means the government couldn't appeal it to the district court. So the magistrate decision stands. That's correct. Before us here. That's correct, Your Honor, in the sense that typically if you look at 3771 – What is your purpose today? My purpose today is to be here and essentially honor the plea agreement that we made with the defense counsel with consultation with the victim's counsel. So who are you in support of? No one, Your Honor. Again, we're not taking a position on the merits. I'm having some confusion. I'm not adding a value to this discussion today. I'm not getting anything from that. That is a fair question, Your Honor. I will say we got an order to be here as a respondent because we were a party below. But otherwise, we don't have a dog in this fight. Thank you. Thank you. All right. Good morning, Your Honors. Colin McBeth on behalf of Ms. Boone. Your Honors, the statutory restitution scheme governing probation cases invests courts with substantial discretion with regard to both the general question of whether to order restitution at all and the specific question of whether restitution is inappropriate under the complexity exception in 18 U.S.C. 3663. The magistrate judging this case was well within the bounds of that substantial discretion when he invoked the complexity exception in declining to order restitution. So turning first to that specific grant of discretion, the complexity exception, Mr. Stone says this is a very straightforward case of determining lost income. And on the surface, perhaps it seems that way. But I think there are a number of facts in this record that once you start digging a little bit deeper make this more complicated than it might at first appear. The first is that Mr. Brown is not a regular salaried employee, does not receive a regular consistent bimonthly paycheck that you can just take a number from and multiply by. He submitted his tax return, didn't he? He did, Your Honor. But my point is that he did not. If you're willing to pay taxes for something, that's a pretty good indication that you earned it, right? Absolutely. We're not contesting that he earned that money. My point is that if you're going to use past income to project what — He paid taxes on past income. Yes, Your Honor. But I'm saying — So we have not only his, I guess, sworn, I don't know if it was sworn or not, sworn statement on it, but we also have his tax return. Yes. We're not contesting the truthfulness of the tax return. But that tax return covers the first five and a half months of 2017.  Sorry, which decision, Your Honor? It didn't make that distinction about what the tax returns covered and give him restitution in that amount. It didn't give any restitution. No, it didn't. It determined that it was too complex. And I'm saying I think one factor that supports that complexity determination is that in this case, looking at five months or five and a half months of past income is not necessarily going to be a reliable way of determining what his income would have been over the following ten months because this is not somebody who receives a consistent bimonthly paycheck in a certain amount. Did he recover past income in restitution? No, he did not, Your Honor. Well, you would agree with me that it is a reliable evidence of past income. There's nothing complex about that, right? Well, it's reliable as to what he earned in those five months. But if you actually look at his first restitution request, it lists how much money he was making in each of those months. And the numbers fluctuate quite a lot from month to month. So in January of 2017, it was $3,200. Then it's $2,700. Then $4,500. Then $1,800. Then back to $2,400. Then $5,700. And I think part of this is that, as the record shows, Mr. Brown's business was just getting off the ground. It had only been in operation for five months. He's a sole proprietor, sole employee. This is not a business with a consistent track record where you could take something, you know, three years of income and say, okay, this is a reliable snapshot of what he earns and multiply that by however many months he was out of work. Have you read the other complexity cases? I've read a few of them. So not so many. So not such a big burden to read, is there? There are not a lot of cases. What is the case that you think is factually closest to this one? Your Honor, I don't have a case that's like this one. No. Nobody has held something like this was too complex. Well, as I said, I think the income is not as reliable as it would be in other cases. There's also the fact that the doctor's note talks about the fact that he thinks Mr. Brown would be out of work up to a year and a year and a half from full-time work as an electrician, but it makes no mention of either part-time work or full-time work in a different line of work. And so as the district court or the magistrate judge noted, that's something where you might want to have a vocational expert come in or a doctor come in and give testimony about whether the victim could work, you know, 24 hours a day or something like that. Did the magistrate give them an opportunity to do that? Well, at the end of the February 1st hearing, which was the first sentencing hearing, the magistrate judge ordered a PSR, which by itself is rare in these cases. My colleague who handles misdemeanor cases entirely says that happens in about maybe 20 percent of misdemeanor cases, and did specifically tell Mr. Stone at the hearing, this reporter is going to be prepared if Mr. There's 20 percent that ask for a PSR or 20 percent that ask for restitution. 20 percent where a PSR is prepared one way or another. And my point with that is simply that taking that step of ordering a PSR shows the district court was taking this seriously, did want to get the facts. And when he ordered the PSR, he specifically instructed the victim, if you have information about your bills and expenses, you can give it to probation. So he had an opportunity to provide as much information as he thought was appropriate. And, you know, this court may not agree in the first instance that it would make the same determination as the magistrate judge, but we are on an abuse of discretion standard here. To be sure. To be sure. But he has to comply with the statute. He does. And I think he did that, Your Honor. As you mentioned, the discretionary or the complexity exception is discretionary, but also the entire statutory scheme is discretionary. Was there a hearing in this case where you told the magistrate judge, you know, look, you can't do this because we need a vocational expert. We need more tax returns to show over time how reliable this is. Did the opposing counsel say we'd like the opportunity to get this information? Was there a fact-finding hearing like that, and what did the parties say at it? So at the first hearing on February 1st, defense counsel said that what she said specifically was that she did not think, she did not feel comfortable just accepting that the gross receipts in the bank statement were themselves reliable information of how much income Mr. Brown had earned. When you say defense counsel, you mean the person on your side? Yes. My colleague who handled this case below. And that she would ordinarily like the opportunity to cross-examine witnesses about, you know, what income there was or what kind of medical condition Mr. Brown was in. She did say that at the first hearing. And the district court at the second hearing on April 18th said, you know, in most cases we would have a medical expert, we would have a vocational expert. I thought that he said that in relation to the fact that there would usually be a civil case brought. I think, well, he said. No, he didn't say that in front of me I would expect there to be medical experts, et cetera. I don't think. Do you remember the record differently? Well, I'd have to look at the transcript. My recollection is he said in a case like this we would usually see. But he regards this as, and I don't think that's wrong, it's usually that you're going to bring a civil case against the other party, the drunk driver, right? Yes, Your Honor. He said that a couple of times. He did. We're not, we obviously can't dispute the fact that he did rely to some extent on the potential for a civil. I don't know that that's per se order error, but that is what was in his mind here. Yes. And it was not something that he usually dealt with. The problem is, it seems to me, that the statute requires him to balance. It requires him to determine what the restitution order should be and seeing whether the need for that outweighs the need to get a fair result that is not prolonged or is not too complex that meets the needs of the victim. And that's my problem here with the abuse of discretion. I mean, notwithstanding what the arguments are made and what the merits are, I think that he could have reached the same conclusion, but I think he has to go through the process. And he didn't. Well, I think... I mean, he was, sort of understandably, he was, he'd never seen this kind of thing before, he said, and it just, he threw up his arms. So I do read the record a bit differently, Your Honor. I think he did go through the process. He explicitly noted that he had the discretion to order this restitution. He said that at both the February 1st hearing and the April 18th hearing, he said, I do have this discretion, and when he was announcing his ruling, he said, I now have to decide whether, as a matter of discretion, to award that restitution or not. And he, you know, the, Mr. Brown points out, points to the part where he says, you know, I'm not usually equipped to do this, but he says, the judge said right after that, but the statute says this court has the authority to do it, so I'm going to do it. But there is a process I have got to follow. Rules apply. So I think he did follow the process. He looked at, you know, the evidence that was in front of him. He heard arguments from defense counsel about the fact that she would want to cross-examine experts on this kind of thing. He knew that Mr. Brown was a, as I said, a, you know, a sole employee with a business that's just getting off the ground with an ambiguous doctor's note. When he quotes the statute, you're right. To the extent the court determines that compilation and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution for any victim, the court may decline. Mr. Brown is not without his day in court. He has a remedy. He has a civil remedy. And to order restitution in the amount that he is being requested with the evidence that would give me the level of confidence and comfort in that I'm being accurate would, in my opinion, complicate and prolong the sentencing hearing. And my question to you is whether you could say in the light of this record and what the evidence was that he had in front of him, whether we can say whether or not that is an abuse of discretion. Because it seems to me the statute talks about weighing the two sides in deciding whether it is too complicated or not. And we have on one side a pretty ordinary calculation and not very much restitution requested considering the damages here. Yes, absolutely. And I just read that it seemed to me what the district court anyway, I think you understand my position. It is. I'm sorry to monopolize. No. Obviously, it is a weighing process. We, of course, agree with that. The statute uses the word weigh, I believe. So we're not disputing that. But I think if you read the transcript as a whole, he did look at the evidence. He did say the just effect of what this victim is saying by itself is not enough. I want to have something more. He had something. First of all, he had sworn affidavit. Did anybody come, a sworn statement, did anybody come in and dispute that? No, but the sworn affidavit simply repeats what the doctor's note says. And the magistrate judge did note why he had some, why he found that note to be quote sworn affidavit by the victim. Yes, Your Honor. Yes, and it says my doctor has told me I can't work full time as an electrician, which is what the doctor's note said. And the magistrate judge explained why he found that to be problematic. What did he think he needed to submit to establish lost income? Well, I think we'd want to have testimony. Lost income, right? Yes, it's lost income, Your Honor. But this is where, this is what the point that I was trying to make about him being an independent contractor, which is that it's hard to gauge. So we know what he made in the first six months of 2017. And his affidavit or his restitution request takes the average weekly income from that period and just multiplies it by, you know, whatever it was. Doesn't sound very complex. So that, the math is not complex. But my point is that getting, that using that first five months as a representative sample of what's to come, I don't think is, I think that. Is it your position that he had to be a salaried employee and had his taxes withheld in order, because we're never going to know to an absolute certainty with someone, I mean, he could be, the person could be fired. Sure, no. But would that have been sufficient? I'm just not sure what was deficient in what he put in. No. There might be other reasons for denying him the restitution. It's not our position that you have to be a salaried employee. So what more did he have to put in here? Well, so it's the combination of. And his tax returns, so there's not. Right. Nobody is a seer to the future. No. It would have been helpful for the district court, I think, to not abuse his discretion in deciding that he would have liked, for instance, to hear testimony about, as I said, this is a five-month-old business operating out of Mr. Brown's home. He just bought a truck. He was. Is your point that what was produced by the victim was not sufficiently reliable to project income as opposed to it was untruthful? Correct. Yes. We're not, we're absolutely not disputing the truthfulness of that information. If I gave that impression, I apologize. Did you tell the magistrate judge that this is not sufficiently reliable for computation purposes, or how was the court to know that? Well, so two points. One is that the defense counsel did say, I'm not aware that Mr. Brown has made any effort to mitigate damages, which goes to what I was saying earlier about getting a part-time job, working in a different line of work. But second of all, the district, the magistrate judge is allowed to make his own conclusions, regardless of whether we make a specific objection. We're not the ones appealing here. It's the victim seeking a mandamus against the magistrate judge. And the magistrate judge can conclude on his own, without it being argued to him by us, that he finds this information unreliable. And I think, again, on an abuse of discretion review, where the question is whether the magistrate judge was acting arbitrarily or irrationally, I don't think this court can say that. This is an interesting case in that this accident, I mean, I know we're not dealing directly with the facts, but this lady runs through this light, the red light, she's drunk. She throws a liquor bottle out of the car. She hits this guy on a motorcycle, throws him all over the place. And drives further on. And she drives on, and he's injured like crazy. He goes to his insurance company, Geico, gets the $30,000 that's there, can't get anything from the lady because she has no insurance. That's their problem. If ever I saw a case that whether this fits restitution or not, that a judge ought to give restitution, he's not going to get any money. I mean, because, and we can almost tell you as a matter of law, this man certainly is injured. There's no question about it. How much were his medical bills? Roughly half a million dollars, I think. Half a million dollars in, does he have a family? Yes, Your Honor. Did he in fact work? And a child. After the accident? I'm not sure. I don't know. But did he work before the accident? Yes. So he has some lost wages. No question about it. Yes. And to give him a goose egg? Because it's complicated. And you're only asking for $18,000. That's not his lost wages. That's not what he claims. He claims, what, a year, year and a half of wages? And he subtracted off the $30,000. That's how you got to the $18,000. So there is a lot of evidence in this case. If the magistrate wants to say it's my discretion, even if the evidence is there, to give it or not, that's one thing. But to say that this evidence is insufficient to establish $18,000 of a restitution to a man who is lawfully pursued, everything I saw was he's lawfully proceeding on the highway. He is hit by a woman who is drunk, throws out the liquor bottle after she runs away, and goes into court and admits to all this and gets a plea to three offenses that it looks like to me she got kissed in court because it's all misdemeanor stuff. And the end result is all you're saying is, well, give me $18,000. And for someone who didn't have the responsibility to get an insurance policy and driving on a car on the road drunk, there is just something patently wrong with this case that anyone would, because I'll be honest with you, I guess the penalty for not paying the restitution doesn't look like at least she could pay anything. I don't know what's going to happen even then because the defense lawyers, the plaintiff's lawyers who wouldn't take her case, well, there's no money. That's the reason, not because there's not a case. That's clearly a case. Probably could get several million dollar verdict on this case, but you're not going to be able to collect it. I think that's the determination of why they wouldn't take the case. That's my understanding. Yes, Your Honor. So the bottom line is, what do we do in a case where there's absolutely some basis for, well, you've got all the medical expenses too now. And why couldn't the magistrate consider, he knows their medical expenses. The medical expenses have been reimbursed some way, haven't they? I believe insurance covered them, Your Honor. But does that obviate restitution? Because restitution goes to the individual. If the insurance company wants to come after it, that's a whole different ballgame. That's with the $30,000 too. That's his insurance. That's not hers. Right. But even with the, so if you got, clearly, Medicare or whatever to pay the dad government, probably could go after it. But the injury is to the individual here. But notwithstanding that, it just seems incredulous to say that he's got to come in with all this evidence to show lost wages when it's clear this man has tremendous damages of which there's no question, as you say, he didn't work for a while, right? How long did he not work that is pretty clear to establish? Certainly up to the time of the sentencing hearing. That's in the record. Did he make money before? Before the accident? Yes. Did he support his family? Yes, Your Honor. And at the end he couldn't do it? And now we think it's complicated to say $18,000 for, I'm at a loss on that. Your Honor, I cannot deny the facts in this case are terrible facts. And Mr. Brown was very badly injured, and we're not here to deny that. The statute that Congress has written, though, says that if determining how much restitution that person is entitled to would complicate or prolong their proceedings, the district court in its discretion, and that outweighs the need for restitution. Who would argue against if you entered an award of $18,000, what's going to happen? What makes it complicated? You've got everything in the world to support it. It's not going to be appealed. I don't think there's a way to where you're going to appeal it. Who's going to appeal it? So what makes it complicated? Well, there are a couple facts. And, again, I think this would be a much different case if Mr. But you can't say that only this case applies to salaried employees. That just can't be the law. Well, that's not our position, Your Honor. And I thought you had told me earlier that that wasn't the law. No, it's not the law. There are a number of factors, all of which together allow the district court But that can't be one of the factors, whether or not you're a salaried employee. Well, I think it You think that Congress enacted a statute which would only whether somebody is a salaried employee, whether they're entitled to restitution or not? No, not as a matter of law, per se. But I think that your past income That's something that the magistrate judge can consider, whether the person is a salaried employee. I think you can look at past income as a predictor of future income. And if you have Well, he showed you that with the tax return. He did. But my point is, Your Honor, that it's uneven income. It fluctuates much from month to month. It's a new business. The doctor has He didn't ask for the highest month. He asked for an average. He did, Your Honor. But, again, this is a new business that, you know Okay. We've interrupted you a lot. Would you like to sum up? You have about a minute, two minutes. Just the final thing I'll say, Your Honor, is that getting the number We acknowledge that absolute precision is not required. But getting the number right is important because this is a condition of probation that if she violates, she could be sent back to prison or jail for. And even though precision, absolute precision is not required, the case law says the estimate must still be a reasonable estimate. And, again, on an abusive discretion standard, we think that the magistrate judge was at least within his discretion to conclude on this record that determining that amount would be too complex. So unless the Court has any other questions. I don't think so. Thank you. Do you have any rebuttals, sir? Thank you, Your Honor. There's several things that I need to correct based on the last presentation. And although two of them are facts, they relate to the law. The first is this whole argument that keeps coming up again about whether he could have worked part-time or mitigation was all rendered irrelevant once the judge found as a fact in Joint Appendix 128 that he believed the man, that he couldn't work because he had all these rods and plates and rehabilitation he was doing. So talking about mitigation by part-time work when the judge made a finding that the man couldn't work, he accepted that he couldn't work at all. That's really irrelevant. That goes to the second misstatement of the facts. Counsel here just said that there was only five-and-a-half months that this business was in operation. That is not true. It is not in the record. There's a tax return that goes from January 1, as we all have, calendar year, to the date of the accident in June. That's why there's five-and-a-half months. If the judge had called for the tax return from the prior year, that could have been requested and it could have been provided. And, in fact, at the earlier hearing when the man put in his expenses, his gross expenses, his outlays, it included material from the year before. So we know for a fact there were tax returns from prior years. This gets to the most important, I think, disagreement I have with counsel on the other side. You asked whether the judge actually had a hearing where he weighed what was going on. The answer to that is absolutely no. It couldn't have happened in February because the very first sentence of 3664, which the judge was following, says that when there is a restitution request, the judge shall order a pre-sentence report that talks about restitution. So this argument that only 20% of the cases before the magistrate may have pre-sentence reports has no relevance here because I don't know what percentage asks for restitution. But when there is a request for restitution, the judge shall order the PSI. And that's why there couldn't have been a balancing before the PSI was even prepared. The PSI is not available until the second hearing, not the February hearing, the second hearing. And we know that the judge didn't do a balancing then because I'd like to read 3664E. The first sentence says, Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. You will note if you look through that transcript, not once does the judge say, by the preponderance of the evidence, I find this or that. The judge never weighs it. He just simply says, this is too complex. I'm not even getting to that stage. We're asking for remand. So the judge does have to say, okay, I've looked at it all. And by the preponderance of the evidence, here's what I find. Thank you very much. Thank you. We will come down and greet the lawyers and then take a recess.
judges: Diana Gribbon Motz, G. Steven Agee, James A. Wynn Jr.